**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ERNEST F. BEAL, | ) |
|                Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  Case No. |
| CHICAGO TRANSIT AUTHORITY, and | ) |
| KANITHA PERRY, | ) |
| | ) |
|                Defendants. | )  JURY DEMANDED |
| | ) |

**<u>COMPLAINT</u>**

Plaintiff, ERNEST F. BEAL, by and through his attorneys, THE COFFEY LAW OFFICE, P.C., states as and for his Complaint against Defendants, the CHICAGO TRANSIT AUTHORITY and KANITHA PERRY as follows:

**<u>Nature of Case</u>**

1.    Plaintiff brings this action against Defendants to recover damages proximately caused by their illegal discrimination and retaliation including failure to accommodate his disability and denial of his FMLA rights resulting in removing him from work in October 2021 followed by terminating his employment in January 2022, all in violation of Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. 12101 *et seq.* ("ADA"), the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), and the common law and clearly mandated public policy of Illinois as embodied in the Illinois Workers' Compensation Act, 820 ILCS § 305/1 *et seq.* ("IWCA").

**<u>Jurisdiction and Venue</u>**

2.    This Court has original jurisdiction over Plaintiff's ADA and FMLA claims under 28 U.S.C. §§ 1331, 1337, and 1343, 29 U.S.C. § 216(b).

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this Court in that Defendants' illegal acts complained of herein took place within the geographical boundaries of this Court's jurisdiction.

5.      On December 6, 2021, Plaintiff timely filed a charge of illegal disability discrimination and retaliation in violation of the ADA against Defendant Chicago Transit Authority with the local district office of the EEOC, Charge No. 440-2022-01674. On the face of his charge, Plaintiff stated his current address of 1510 Marengo Avenue, Forest Park, IL 60130.

6.      On August 23, 2022, Plaintiff timely filed another charge of illegal retaliation against Defendant Chicago Transit Authority with the local district office of the EEOC, Charge No. 440-2022-04993. On the face of his charge, Plaintiff stated his current address of 1510 Marengo Avenue, Forest Park, IL 60130.

7.      On October 27, 2022, Plaintiff timely filed a third charge of illegal disability discrimination and retaliation in violation of the ADA against Defendant Chicago Transit Authority with the local district office of the EEOC, Charge No. 440-2023-00588. On the face of his charge, Plaintiff stated his current address of 1510 Marengo Avenue, Forest Park, IL 60130.

8.      As of the filing date of this Complaint, the EEOC has yet to issue its Notice of Right to Sue in connection with Plaintiff's Charge No. 440-2023-00588. When it does, Plaintiff will move for leave to amend this Complaint to add his ADA disability, failure to accommodate, and retaliation claims in this case.

**The Parties**

9.      Plaintiff, ERNEST F. BEAL (hereafter "Ernest"), is an individual presently residing at 1510 Marengo Avenue, Forest Park, IL 60130.

10.      Defendant, the CHICAGO TRANSIT AUTHORITY (hereafter the "CTA"), is an independent governmental agency created by the Metropolitan Transit Authority Act (70 ILCS § 3605) that conducts a significant business throughout the geographical boundaries of this Court including facilities where Plaintiff was employed and worked for the CTA and where the CTA's illegal activities described below took place.

11.      At all relevant times, the CTA employed in excess of 50 employees and was thus an "employer" and covered entity as defined under the ADA and FMLA.

12.      Defendant KANITHA PERRY is an individual who at all times relevant to this Complaint was employed by the CTA in the managerial position of Senior Manager, Rail Maintenance Blue Line.

13.      At all relevant times, Defendant Perry had supervisory authority over Ernest's employment, acted directly or indirectly in the interest of the CTA with respect to Ernest and the FMLA violations set forth below, and was responsible in whole or in part for the FMLA violations set forth below. Defendant Perry was therefore an "employer" as defined under the FMLA. See 29 U.S.C. § 2611(4)(A)(i),(ii).

**Relevant Facts**

14.      Ernest started his employment with the CTA in or around March 2004. His last position was Car Repairer.

15.      During his employment with the CTA, Ernest was a member in good standing of the Amalgamated Transit Union Local 308.

3

16.     During his employment with the CTA, Ernest was diagnosed with various serious and debilitating medical conditions including Sjogren Syndrome, lymphoma as a result of Sjogren complications, and Raynaud Syndrome.

17.     At various points during his employment, Ernest requested and was approved for continuous and intermittent FMLA medical leave from work in connection with one or more of his own serious health conditions.

18.     In 2020 and 2021 through to the CTA's October 8, 2021, removal of him from work, Ernest took numerous days of FMLA leave from work.

19.     Also, at various points during his employment, Ernest applied and was granted short-term disability pay related to one or more of his own serious health conditions.

20.     Since on or about August 2018, Ernest has resided at 1510 Marengo Avenue, Forest Park, IL 60130.

21.     In March 2020, Ernest submitted to the CTA a request for reasonable accommodation in the form of a month of leave from work supported by his physician's statement related to his Raynaud syndrome medical condition. On his request he correctly stated his 1510 Marengo Avenue, Forest Park, IL 60130, address as well as his correct e-mail address and his cell telephone number.

22.     On January 15, 2021, Ernest suffered a serious injury to his right side, shoulder, and tailbone while at work.

23.     Ernest reported the incident and injuries to his supervisor.

24.     Ernest thereafter missed approximately two weeks of work, and sought and received related medical treatment, including physical therapy and right shoulder

4

surgery in December 2021.

25.     Ernest submitted to the CTA a completed FMLA certification signed by his physician related to the time he missed for work following and as a result of the January 15, 2021, work injury.

26.     Ernest also applied for short term disability pay for the time he missed work due to the January 15, 2021, work injury.

27.     The Reed Group, CTA's FMLA and Disability Administrator, notified Ernst in writing via letters mailed to his correct address 1510 Marengo Ave., Forest Park, IL 60130, that his application for STD benefits was denied because the accident/injury occurred at work.

28.     On or about February 1 or 2, 2021, Ernest returned to work and worked his regular, full-time job through to October 7, 2021, when Ernest's doctor placed him on work restrictions.

29.     Ernest retained a workers' compensation attorney related to the January 2021 work injury, and, in September 2021, filed a workers' compensation claim against the CTA with the Illinois Workers' Compensation Commission. On the face of his application, Plaintiff stated his current address of 1510 Marengo Avenue, Forest Park, IL 60130.

30.     The CTA was shortly thereafter served with a copy of Ernest's IWCC application related to the January 15, 2021, work injury.

31.     On October 4, 2021, Ernest received via e-mail a letter from the CTA's third-party workers' comp administrator regarding his WC claim related to his January 15, 2021, work injury. The letter was addressed to Ernest's correct address, 1510

5

Marengo Avenue, Forest Park, IL 60130. The letter acknowledged receipt of Ernest's

workers' comp claim and stated that he would either "receive an automatic FMLA

approval," or his "work absence will be reviewed separately for [FMLA]" by the CTA's

third-party FMLA administrator, The Reed Group.

32.     On October 8, 2021, Ernest presented his physician's medical work

restrictions (i.e., no lifting with right arm > 10 lbs., no overhead lifting or pulling with his

right arm) to the CTA and requested reasonable accommodation including work within

the restrictions or leave from work for a short period of time.

33.     The CTA immediately denied Ernest's request. Ernest's supervisor,

Defendant Kanitha Perry, notified Ernest that the CTA would not allow him to work in

the transitional work program because it was reserved for workers whom the CTA

believed were injured on duty.

34.     The CTA then ordered Ernest to leave work without engaging in any

interactive process to determine whether any accommodations were feasible.

35.     Also, as of October 8, 2021, Ernest was eligible for FMLA leave from

work.

36.     Defendants failed to advise Ernest of his right to leave from work under

the FMLA, and failed to provide any notices to Ernest regarding whether he was eligible

for FMLA or how much FMLA time he had left.

37.     Ernest thereafter continued to communicate with his direct supervisor and

other individuals at his Des Plaines, Illinois work location.

38.     On January 10, 2022, unbeknownst to Ernest, Defendants terminated

Ernest's employment for the false and pretextual alleged reason that he failed to contact

6

his work location or provide documentation regarding my absence from work and was therefore AWOL.

39.     Defendants' termination letter along with several earlier letters it allegedly sent to Ernest were inexplicably all addressed to an older address and not his correct, current address, 1510 Marengo Avenue, Forest Park, IL 60130, of which the CTA was well aware and had in fact used in the recent past.

40.     Ernest did not receive the CTA's letters incorrectly addressed to an older address.

41.     Ernest did not learn of his termination until February 10, 2022, when he tried to log into the CTA's Oracle employee portal and was denied.

## Count I: Interference with, Restraint and Denial of Rights in Violation of the FMLA (v. All Defendants)

42.     Ernest restates and fully incorporates into Count I the allegations of Paragraphs 1 through 41, above.

43.     The FMLA was enacted because Congress found, among other things, that "it is important for the development of children and the family unit that fathers and mothers be able to participate in early childrearing and the care of family members who have serious health conditions" and that "the lack of employment policies to accommodate working parents can force individuals to choose between job security and parenting." 29 U.S.C. §§ 2601(a)(2)-(3).

44.     The FMLA was intended to "balance the demands of the workplace with the needs of families" and "entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1)-(2). The FMLA seeks to accomplish these purposes "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. §

7

2601(b)(3).

45.     The FMLA provides that "an eligible employee shall be entitled to take a total of 12 workweeks of leave within a 12-month period" to care for a spouse with a serious health condition renders them unable to perform their job function. 29 U.S.C. § 2612(a)(1)(D).

46.     "Eligible employee" is defined in the statute as "an employee who has been employed . . . for at least 12 months by the employer" and who has "at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

47.     The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. §2615(a)(1).

48.     The FMLA regulations require that covered employers such as Defendants notify employees who request leave of their eligibility for FMLA leave within five business days. See 29 C.F.R. 29 CFR § 825.300(b).

49.     This notice must detail the employer's specific expectations and obligations of the employee and explain any consequences of a failure to meet these obligations. 29 C.F.R. 29 CFR § 825.300(c).

50.     This notice must also include among other things that the leave may be designated and counted against the employee's annual FMLA leave entitlement if qualifying (see §§ 825.300(c) and 825.301) and the applicable 12-month period for FMLA entitlement (see §§ 825.127(c), 825.200(b), (f), and (g)), must notify the employee of the amount of leave counted against the employee's FMLA leave

entitlement, including, if known, the number of hours, days, or weeks that will be counted against the employee's FMLA leave entitlement (see §§ 825.300(d)(4), (d)(6)); as well as any requirements for the employee to furnish certification of a serious health condition, serious injury or illness, or qualifying exigency arising out of covered active duty or call to covered active duty status, and the consequences of failing to do so (see §§ 825.305, 825.309, 825.310, 825.313). 29 C.F.R. 29 CFR § 825.300(c).

51.     As described above, in October 2021 and thereafter through to Defendants' January 2022 termination of his employment,

a.  Ernest was an "eligible employee" as defined under the FMLA.

b.  Ernest suffered from an FMLA qualifying "serious health condition."

c.  Defendants were aware of Ernest's need for medical leave from work related to his own serious health condition.

d.  Defendants interfered with, restrained, and denied Ernest's right to FMLA leave from work.

e.  Defendants failed to provide Ernest with notices required by the FMLA and/or its regulations including but not limited to: notice of her FMLA eligibility detailing their specific expectations and obligations of the employee and explain any consequences of a failure to meet these obligations, notice of that leave may be designated and counted against her annual FMLA leave entitlement if qualifying, notice of the applicable 12-month period for FMLA entitlement, notice of any requirements for her to furnish certification of a serious health condition and the consequences of failing to do so, and notice of amount of leave used or remaining. And,

9

  f. Defendants' terminated Ernest's employment for what should have been

   FMLA-protected absences from work.

52. As a direct and proximate result of Defendants' illegal interference,

restraint and denials as described above, Ernest suffered mental and related physical

pain and anguish, loss of enjoyment of life, a loss of wages, including, but not limited to,

salary, bonuses, a loss of employment benefits and other pecuniary and non-pecuniary

damages, and she is expected to incur future damages.

53. Defendants knew that their interference, restraint, and denials as

described above were prohibited by the FMLA or acted with a reckless disregard to that

possibility.

**Count II: Retaliation in Violation of the FMLA**
**(v. All Defendants)**

54. Ernest restates and fully incorporates into Count III the allegations of

Paragraphs 1 through 41, above.

55. The FMLA was enacted because Congress found, among other things,

that "it is important for the development of children and the family unit that fathers and

mothers be able to participate in early childrearing and the care of family members who

have serious health conditions" and that "the lack of employment policies to

accommodate working parents can force individuals to choose between job security and

parenting." 29 U.S.C. §§ 2601(a)(2)-(3).

56. The FMLA was intended to "balance the demands of the workplace with

the needs of families" and "entitle employees to take reasonable leave for medical

reasons." 29 U.S.C. § 2601(b)(1)-(2). The FMLA seeks to accomplish these purposes

"in a manner that accommodates the legitimate interests of employers." 29 U.S.C. §

10

2601(b)(3).

57.     The FMLA also prohibits employers from discriminating or retaliating against an employee for exercising or attempting to exercise his or her FMLA rights. 29 U.S.C. § 2615(a)(2).

58.     As described above, Ernest exercised his rights under the FMLA when he requested and took protected FMLA leave from work throughout 2019, 2020 and 2021 through to Defendants removing him from work on October 8, 2021.

59.     Defendants took the above-described adverse actions against Michael including denying his requests for reasonable accommodation including leave from work and terminating his employment because of his protected activities in violation of the FMLA.

60.     As a direct and proximate result of Defendants' illegal retaliation as described above, Ernest has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security and other benefits in a sum to be proven at trial, and has suffered emotional and related physical pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and he is expected to incur future damages.

61.     Defendants knew that their retaliatory acts and omissions as described above were prohibited by the FMLA or acted with reckless disregard to that possibility.

**Count III: Retaliatory Removal from Work, Discharge, and Refusal to Recall in Violation of the IWCA and Illinois Common Law (v. Defendant CTA)**

62.     Ernest restates and fully incorporates into Count III his allegations set forth in Paragraphs 1 through 41, above.

63.     Section 4(h) of the IWCA states:

It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act.   820 ILCS § 305 (4)(h).

64.     Ernest's retaining counsel, filing a workers' compensation claim with the IWCC, seeking medical treatment and missing workdays in connection with his January 2021 workplace accident and injuries as detailed above, are individually and in the aggregate activities protected by Illinois common law and the IWCA.

65.     The CTA was aware of Ernest's IWCA-protected activities and decided to take the above-described acts and omissions against him within a short time of becoming aware.

66.     The CTA took the above-described acts and omissions against Ernest including removing him from work in October 2021, denying his requests for accommodation, and terminating his employment in January 2022 because of his IWCA-protected activities.

67.     Also, as described above, the CTA failed to engage in an interactive process to identify potential work adjustments that would have allowed Ernest to continue to work and/or return to work in a position consistent with the limitations related to his disability because of his of his IWCA-protected activities.

68.     The CTA treated similarly situated, non IWCA-protected employees more favorably than Ernest.

69.     As a direct and proximate result of the CTA's illegal retaliation as described above, Ernest has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security and other benefits in a sum to be proven at trial, and has suffered emotional and physical pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and he is expected to incur future damages.

70.     The above-described conduct by the CTA was willful and wanton, and with reckless disregard and indifference to Illinois common law and the IWCA, and to Ernest's rights thereunder. The CTA should therefore be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

## **Prayer for Relief (as to all Counts)**

**WHEREFORE**, Plaintiff, ERNEST F. BEAL, respectfully requests that this Court enter judgment in his favor and against Defendants jointly and severally as follows:

A.     Order Defendants to make ERNEST whole by paying him appropriate back pay and reimbursement for lost pension, social security and other benefits and out-of-pocket expenses, plus pre-judgment interest in an amount to be shown at trial;

B.     Order Defendants to immediately reinstate ERNEST to his former position or one comparable thereto; or, in the alternative, order Defendants to pay ERNEST an appropriate amount of front pay;

C.     [Count I and II only] Order Defendants to pay ERNEST an additional amount as liquidated damages equal to the sum of the amount described in Par. A, above.

D.     Order Defendants to pay ERNEST compensatory damages in the maximum amount allowable under the law;

E.     [Counts III, only] Order Defendant CTA to pay ERNEST punitive damages in the maximum amount allowable under the law.

13

F.    Order Defendants to pay ERNEST'S costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees;

G.  Try all issues of fact to a jury; and,

H.  Grant such other relief as the Court deems just.

Respectfully submitted,
Plaintiff, ERNEST F. BEAL,


By: /s/ Timothy J. Coffey
Timothy J. Coffey (ARDC # 6224686)
THE COFFEY LAW OFFICE, P.C.
Attorneys for ERNEST F. BEAL
118 N. Clinton Street, Ste. 125
Chicago, IL   60661
(312) 627-9700
(630) 326-6601 (fax)
tcoffey@worker-law.com