UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERNEST F. BEAL, | |
| Plaintiff, | No. 23 CV 1387 |
| v. | Judge Manish S. Shah |
| CHICAGO TRANSIT AUTHORITY and KANITHA PERRY, | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Ernest Beal, a Car Repairer for the Chicago Transit Authority, was injured while working on the job. Beal alleges that the CTA violated the Americans with Disabilities Act, the Family Medical Leave Act, and the Illinois Workers' Compensation Act. He names his supervisor, Kanitha Perry, as an additional defendant in his FMLA claims. The defendants move to dismiss the complaint, and for the reasons stated below, their motion is granted in part, denied in part.

I. **Legal Standard**

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). At this stage, I accept all factual allegations in the complaint

as true and draw all reasonable inferences in the plaintiff's favor, disregarding legal conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

## II. Facts

Beal worked at the CTA for 18 years, most recently as a Car Repairer. [11] ¶ 15.[1] During his employment, Beal was diagnosed with several medical conditions including Sjögren Syndrome, lymphoma related to Sjögren complications, and Raynaud's Syndrome. [11] ¶ 17. The CTA approved Beal for FMLA leave throughout 2020 and 2021 connected with these medical conditions. [11] ¶ 18–19. He also applied for and received short-term disability pay related to these conditions. [11] ¶ 20.

Most recently, Beal suffered an injury to his right side, shoulder, and tailbone while at work in January 2021 [11] ¶ 23. He informed his supervisor, Perry, of his injury and missed two weeks of work to receive medical treatment. [11] ¶¶ 24–25. He submitted an FMLA certification signed by his doctor to the CTA and applied for short-term disability pay. [11] ¶¶ 26–27. The CTA's third-party administrator informed Beal that he was ineligible for short-term disability pay because the injury occurred at work. [11] ¶ 28. He later filed a workers' compensation claim with the Illinois Workers' Compensation Commission. [11] ¶ 30.

A month after his injury, Beal returned to his position full-time. [11] ¶ 29. He worked for several months until his doctor placed him on work restrictions. [11] ¶ 29.

---

[1] Bracketed numbers refer to docket numbers on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings.

Beal presented the CTA with the doctor's note detailing his work restrictions ("no lifting with the right arm > 10 lbs., no overhead lifting or pulling with his right arm"). [11] ¶ 33. Along with the doctor's note, Beal made two requests: a reasonable accommodation within those work restrictions or leave from work for a short period of time. [11] ¶ 33. Perry told Beal that he was not eligible for the transitional work program because it was reserved for workers whom the CTA believed were injured on duty. [11] ¶ 34. Beal was then told to "leave work." [11] ¶ 35. Beal did not report to work but continued to check in with his supervisor until he learned of his termination. [11] ¶ 38, 42. While the CTA mailed a termination letter to Beal in January 2022, Beal did not find out about the termination until the following month when he could not log onto his employee portal. [11] ¶¶ 39–42.[2] The termination letter stated that Beal had failed to contact his work location or provide an explanation for his absence and was deemed AWOL. [11] ¶ 39.

Beal filed charges with the EEOC for violations of the ADA on December 6, 2021, August 2, 2022, and October 27, 2022. [11] ¶¶ 5–7. The EEOC issued a right-to-sue notice on March 23, 2023. [11-1] at 1. Beal filed this lawsuit, alleging failure-to-accommodate, disparate treatment, and retaliation under the ADA; interference and retaliation under the FMLA; and retaliatory discharge under the IWCA. [11].

---

[2] Beal explains that the January termination letter had been incorrectly mailed to his former address, so he did not receive timely notice. [11] ¶ 40.

### III. Analysis

#### A. The Americans with Disabilities Act

The ADA prohibits disability discrimination by employers. 42 U.S.C. § 12112(a). Employees may pursue two types of claims under the ADA: failure-to-accommodate and disparate treatment. 42 U.S.C. § 12112(b). To bring either claim, an employee must allege that he was a qualified individual with a disability at the time of the employment decision. *Id.* The ADA defines disability to include "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). An impairment is a disability if it substantially limits a person's ability to "perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). The standard is "construed broadly in favor of expansive coverage." 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.2(j)(1)(i). While the standard is not a demanding one, "[n]ot every medical affliction amounts to, or gives rise to, a substantial limitation on a major life activity." *Cassimy v. Bd. of Educ. of Rockford Public Schs., Dist. No. 205*, 461 F.3d 932, 936 (7th Cir. 2006). The employee must specifically connect how their alleged impairment substantially limits a major life activity. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) (plaintiffs must allege a specific disability in the complaint to provide defendants with fair notice).

Beal alleges disability under two alternatives: actual disability and a record of disability. [11] ¶ 8; 42 U.S.C. § 12102(1)(A), (C). He cites to a list of medical conditions

including Sjögren Syndrome, lymphoma, and Raynaud's Syndrome for which he was granted medical leave. [11] ¶ 17. Beal alleges that he submitted a request for accommodation for Raynaud's Syndrome in March 2020. [11] ¶ 22. Beal does not state any physical or mental impairment related to his Raynaud's diagnosis nor how it substantially limited any major life activity at the time of the employment action. [11] ¶ 22. Because he has not identified a specific impairment related to his Raynaud's condition that substantially limits a major life activity, he has not adequately alleged disability for this condition.

Beal, however, has plausibly alleged a disability based on his January 2021 injury. Beal alleges that he was injured on "his right side, shoulder, and tailbone." [11] ¶ 23. Later that year, he met with his physician who imposed work restrictions— "no lifting with right arm > 10 lbs., no overhead lifting or pulling with his right arm." [11] ¶ 33. Occupational injuries can result in an impairment that substantially limits a major life activity. *See* EEOC Enforcement Guidance: Workers' Compensation and the ADA, 1996 WL 33161338, at *2 (Sept. 3, 1996). And "lifting" is recognized in the ADA's non-exhaustive list of major life activities. *See* 42 U.S.C. § 12102(2)(A); *Frazier-Hill v. Chicago Transit Auth.*, 75 F.4th 797, 803 (7th Cir. 2023) (noting that the ability to lift and reach are major life activities). Beal has connected a physical impairment (limited mobility to his right side) with a substantial limitation on a major life activity (lifting). He has adequately alleged a disability under the ADA for this injury.

5

Beal also alleges disability based on a record of physical impairment. [11] ¶ 45. An employee may establish disability by showing he has "a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). This includes people "who have recovered from previously disabling conditions (cancer or coronary disease, for example) but who may remain vulnerable to the fear and stereotypes of their employers." *See Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 509 (7th Cir. 1998). Again, Beal's Amended Complaint is unclear on how his previous diagnoses substantially limited a major life activity. *See id.* at 510 n.7 (noting that a diagnosis alone is not sufficient to constitute a record of impairment but "a record reflecting the kind of impairment that would impose a substantial limitation on one or more of plaintiff's major life activities" could be sufficient). Beal has alleged a record of impairment based on his injury that the CTA was aware of since January 2021. This too is a plausible allegation of disability.

An employee with a disability must also allege that they could perform the essential functions of their job "with or without reasonable accommodation." 42 U.S.C. § 12111(8). The CTA argues that Beal did not identify any accommodation that would have allowed him to perform his duties, [15] at 7, and did not request to enter the transitional work program as a form of reasonable accommodation, [22] at 4. While Beal does not list the essential functions of a Car Repairer, he does allege sufficient facts to permit a reasonable inference that he was qualified—he resumed working in his regular, full-time position following his injury in January until the

disputed events in October. [11] ¶ 29. Beal also plausibly alleges that he was able to perform the essential function of the Car Repairer position with reasonable accommodations: work within the lifting restrictions specified in his doctor's note or leave from work for a short period of time. [11] ¶ 33. Performing a job with medical work restrictions is a form of reasonable accommodation. *See* EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, 2002 WL 31994335, at *5 (Oct. 17, 2002). Leave is also a form of reasonable accommodation. *See id.* at *14; 29 C.F.R. 1630, App. § 1630.2(o) (reasonable accommodations "could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment"); *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017) (distinguishing between "a brief period of leave to deal with a medical condition" and a long-term leave of absence). The CTA argues that Beal failed to raise the existence of a transitional work program/light duty in his Amended Complaint. [22] at 10.[3] But Beal's Amended Complaint suggests that Perry did consider him for the transitional work program when she denied his request and told him that it was not available to employees

---

[3] The CTA argues that Beal failed to allege in his Amended Complaint that he requested being placed on light duty/transitional work program, [22] at 4–5, and so may not attempt to add additional facts through his response brief. A plaintiff may not amend his complaint through his response brief. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). But a plaintiff is permitted to "elaborate on his factual allegations" so long as those elaborations are "consistent with the pleadings." *See Geinosky v. City of Chicago*, 675 F.3d 743, 745-46 n.1 (7th Cir. 2012) (citations omitted). Beal did allege in his Amended Complaint that his supervisor denied him for the transitional work program. [11] ¶ 34. The fact that he was denied placement in the transitional work program is consistent with the allegation that he requested it when he presented his doctor's note.

7

injured on the job. [11] ¶ 34. While discovery may prove otherwise, Beal has sufficiently alleged that he was a qualified individual with a disability at this stage.

To state a claim for failure-to-accommodate, an employee must allege that (1) they were a qualified individual with a disability; (2) their employer was aware of their disability; and (3) the employer failed to accommodate their disability. *See Youngman v. Peoria County*, 947 F.3d 1037, 1042 (7th Cir. 2020); 42 U.S.C. § 12112(b)(5)(A). As discussed above, Beal has plausibly alleged the first element. As for the second element, the CTA was put on notice of Beal's disability when he presented his doctor's note and requested two reasonable accommodations. The accommodation process begins when an employee notifies his employer of his disability and "at that point, an employer's liability is triggered for failure to provide accommodations." *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998) (internal quotation marks omitted). An employer is not required to provide an employee with the exact accommodation requested or preferred, they need only provide some reasonable accommodation. *See Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 681 (7th Cir. 2010). Because the CTA did not engage in any further discussions with Beal after receiving notice in October or offer any reasonable accommodations, Beal has sufficiently alleged a failure-to-accommodate claim.

To state a claim for disparate treatment under the ADA, the employee must allege that (1) he was disabled; (2) he was qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) that his disability was

8

the "but for" cause of an adverse employment action. *See Castetter v. Dolgencorp, LLC*, 953 F.3d 994, 996 (7th Cir. 2020). At the pleading stage, a complaint need only identify "the type of discrimination" that the plaintiff believes occurred, "by whom,… and when." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010)). Beal has done so. As discussed above, Beal plausibly alleges the first two elements. As to causation, Beal suggests that the CTA's explanation for his termination—that he was absent without leave—was false and pretextual because he had continued to communicate with his supervisor after he was "told to leave." [11] ¶ 35, 38–39. Beal does not dispute that he did not report to work after October but his response brief, [21], characterizes this absence as a "unilateral removal[] from work and placement on an indefinite and unwanted leave." [21] at 7, n.2.[4] He offers a different version of events in which he was not AWOL but told to leave after notifying his supervisor of his disability. Because he alleges the CTA's explanation is false, Beal's Amended Complaint suggests that his termination was actually "because of" his disability.[5] Beal offers no further facts about why a performance-based, nondiscriminatory reason could be pretextual (e.g., a history of positive performance

---

[4] Beal's initial explanation of this period of absence in his Amended Complaint and his characterization in his response brief are not inconsistent with each other, and I consider his explanation in the response brief as an elaboration of additional facts consistent with his pleadings. *See Geinosky*, 675 F.3d at 745-46 n.1.

[5] Defendants cite to cases in which termination decisions based on misconduct resulting from a disability were found to be legitimate, nondiscriminatory reasons. [22] at 21–22. At the pleading stage, Beal need only allege facts to support an inference of discrimination because of his disability.

reviews prior to the request for accommodation), and while this may be ultimately insufficient to carry his burden on this claim, it is not required at this stage. He has plausibly alleged a disparate treatment claim.

Beal raises a third claim for retaliation under the ADA. To state a claim for retaliation, an employee must allege that (1) he engaged in protected activity, (2) he suffered an adverse action, and (3) there was a "but for" causal connection between the two. *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020). Employees who are not qualified individuals under the ADA may still bring a retaliation claim. *See Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018). Beal alleges that he was terminated by the CTA because of his request for reasonable accommodations and for filing ADA violation charges with the EEOC. [11] ¶ 56. The CTA does not dispute the first two elements. [15] at 9. The problem with Beal's claim is that it fails to plausibly allege causation. Close timing between the protected activity and adverse action is rarely sufficient. *See Kotaska*, 966 F.3d at 633. But Beal's Amended Complaint on this count does not even allege suspicious timing. It mentions only that the "CTA treated similarly-situated, non ADA-protected employees more favorably than Ernest." [11] ¶ 58. While this allegation may support an inference of disparate treatment, it is insufficient to support an allegation of retaliation. Because he does not adequately allege causation, the ADA retaliation claim is dismissed.

B.   **The Family Medical Leave Act**

The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny" an employee's exercise of rights under the statute and to "discharge or in any other manner discriminate against any individual for opposing any practice" prohibited by statute. 29 U.S.C. § 2615(a)(1), (2). To state a claim for FMLA interference, the employee must show that (1) he was eligible for FMLA protection, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied or interfered with FMLA benefits to which he was entitled. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015). The CTA and Perry dispute only the fifth element.[6] Beal's interference claim is based on an alleged failure to provide notice as required under the statute.[7] [11] ¶ 67–70. He alleges that he was eligible for FMLA leave in October 2021, but the CTA did not provide him with the requisite notice. [11] ¶ 70. The FMLA does not require additional eligibility notice for absences for the same qualifying reason during the applicable leave year or for absences for a different qualifying reason during the same leave year unless the

---

[6] Beal brings the FMLA interference and retaliation claims against the CTA and Kanitha Perry in her individual capacity. [11] ¶ 13–14. Supervisors may be held personally liable under the FMLA as an "employer." *See* 29 U.S.C. § 2611(4)(A)(ii)(I) (defining employer to encompass "any person who acts, directly or indirectly, in the interest of an employer"); *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 n.2 (7th Cir. 2001) (implying that the FMLA's definition of employer is broader than that of Title VII).

[7] Beal's Amended Complaint alleges that the CTA and Perry "terminated Ernest's employment for what should have been FMLA-protected absences from work." [11] ¶ 70(f). Because Beal alleges the termination was a consequence of his failure to receive notice from his employer about his eligibility for FMLA leave, I do not treat this as a separate interference claim.

employee's eligibility status has changed. *See* 29 C.F.R. § 825.300(b)(1), (3). If the employee's eligibility status has changed, then the employer must provide notice of the change to the employee within five business days. *See* 29 C.F.R. § 825.300(b)(3). While Beal's Amended Complaint does not contain exact dates, he states that he "took numerous days of FMLA leave" in 2020 and 2021. [11] ¶ 19. Beal's last FMLA-approved leave was in 2021, so his employer was not required by statute to provide notice again in October of the same leave year. Because the employer did not violate FMLA's notice requirements, Beal's claim for interference is dismissed.

To state a claim retaliation under the FMLA, an employee must plausibly allege that he engaged in protected activity, he suffered an adverse employment action, and a causal connection existed between the two. *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018). Beal alleges that he exercised his FMLA-protected activities throughout 2019, 2020 and 2021 until his removal from work in October 2021. [11] ¶ 13. Suspicious timing alone is rarely sufficient to establish causation. *See Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 775 (7th Cir. 2012). And a conclusory allegation of causation need not be accepted as true at this stage of the case. *See Iqbal*, 556 U.S. at 678. Here, Beal pleads a two-year gap between his first FMLA leave and his termination. Even looking at only his most recent FMLA leave in 2021, Beal returned to work for several months afterwards. Because the complaint provides no allegations other than a conclusory one to support an inference of causation, Beal's claim for retaliation under the FMLA is dismissed.

12

### C. The Illinois Workers' Compensation Act

The Illinois Workers' Compensation Act prohibits "any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge" an employee for exercising rights under the statute. 820 ILCS 305/4(h). To bring a claim for retaliatory discharge under the IWCA, an employee must allege: "(1) his status as an employee of the defendant before injury; (2) his exercise of a right granted by the Workers' Compensation Act; and (3) a causal relationship between his discharge and the exercise of his right." *Gordon,* 674 F.3d at 773. To establish causation, an employee "must affirmatively show that the discharge was primarily in retaliation for [his] exercise of a protected right." *Id.* at 774. The CTA argues that it was unaware of Beal's workers' compensation claim because the third-party administrator is responsible for processing these claims. [15] at 14–15. But Beal states that the CTA was served with a copy of his claim after he had filed it with the Illinois Workers' Compensation Commission in September 2021. [11] ¶ 30–31. This is sufficient to establish notice. Similar to his ADA and FMLA retaliation claim, however, Beal's retaliation claim under the IWCA fails for lack of plausible causation. Beal only pleads the timing of events to allege retaliation. [11] ¶ 84. But claims of temporal proximity standing alone do not plausibly allege a claim for retaliation. The retaliation claim under the IWCA is dismissed.

### D. Punitive Damages

The CTA moves to strike Beal's demand for punitive damages, [11] ¶¶ 53, 60, 89, from the Amended Complaint. [15] at 15. The ADA does not permit recovery of

13

punitive damages against municipalities. *See Barnes v. Gorman*, 536 U.S. 181, 189 (extending the prohibition on punitive damages against municipalities under Title VI to the ADA). Likewise, punitive damages against municipalities are not available under the IWCA. *See George v. Chicago Transit* Authority, 58 Ill. App. 3d 692 (extending immunity from punitive damages to the CTA despite its exclusion from the Tort Immunity Act). The CTA's motion to strike demands for punitive damages from the Amended Complaint is granted.

### IV. Conclusion

The defendants' motion to dismiss, [15], is denied in part, granted in part. Beal's failure-to-accommodate and disparate treatment claims under the ADA survive. Beal's claims for retaliation under the ADA, interference and retaliation under the FMLA, and retaliation under the IWCA are dismissed without prejudice.[8] The defendants' motion to strike demands for punitive damages from the Amended Complaint is granted. The parties shall file a joint status report with a proposed case schedule by October 19, 2023.

ENTER:

Date: October 4, 2023

Manish S. Shah
U.S. District Judge

---

[8] *See NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 310 (7th Cir. 2018) ("Ordinarily ... a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015))).